(69 Hun, 460.)
STEVENS et al. v. CENTRAL NAT. BANK OF BOSTON et al.

(Supreme Court, General Term, Third Department. May 8, 1893.)

ENJOINING JUDICIAL SALE—CONFLICTING STATE AND FEDERAL JURISDICTION.

In 1872 a railroad mortgage was foreclosed, and sale made to H. and L. In 1880 one S. brought an action in behalf of himself and other bondholders, alleging that H. and L. purchased the road and mortgaged it to P. and D. for the benefit of the original bondholders. A receiver was appointed, and, on his application, certificates were issued, a large number of them to defendant, and judgment was entered directing a sale of the road, subject to the certificates, and it was accordingly sold to H. and F. In 1886 appellant, the interest on the certificates not having been paid, brought an action against H., F., and others, which suit was removed to the circuit court of the United States, and resulted in a decree directing the sale of the road and the payment of defendant. *Held,* in an action begun in 1887 by bondholders who were not made parties to the action brought in 1880 by S., that, the judgment in that action being vacated, on the ground that the action was not a representative one, and was fraudulently conducted, and it being adjudged that the decree in the action brought in 1872 be enforced, it was proper to enjoin the sale under the decree of the United States circuit court.

Appeal from special term, Saratoga county.

Action by Aaron R. Stevens and others against the Union Trust Company of New York and others. From an order denying a motion of the Central National Bank and other defendants to strike out from the judgment a provision enjoining them from proceeding with a sale of the Lebanon Springs Railroad under a decree of the circuit court of the United States, the moving parties appeal. Affirmed.

For former reports, see 11 N. Y. Supp. 268; 16 N. Y. Supp. 380.

The Lebanon Springs Railroad was mortgaged to the Union Trust Company of New York, to secure bonds to the amount of $2,000,000. Default having been made, the Union Trust Company brought two actions to foreclose, one in New York and one in Vermont, and in December, 1872, it obtained a judgment of foreclosure and sale in the former action, and a decree of foreclosure and sale in the latter action. Under the judgment the part of the railroad in New York was sold to one Duncan, for $100,000, none of which has ever been paid, but a deed was given to one Hull, a clerk of Duncan's. Under the decree the part in Vermont was sold to one Park, for $25,000, none of which has ever been paid; and by the direction of Park a deed was given to one Lincoln, one of Park's clerks. Hull and Lincoln then united in a mortgage of the railroad to Park and Duncan for $5,000,000, payable in six months. There was no consideration for this either. Having given this mortgage, Hull and Lincoln, again without any consideration, deeded the entire railroad to the New York, Boston & Montreal Railway Company. This latter company mortgaged it for $25,000,000, sold enough of the bonds in France to realize $6,000,000, and then failed, and all its property passed into the hands of a receiver. The railroad was then taken possession of by one Root, who ran it in the name of a company which he organized under the manufacturing law of New York, and which he called the "Harlem Extension Railroad South Coal Transportation Company." Matters being in this state, Marvin Sackett, in September, 1880, brought an action against the New York, Boston & Montreal Railway Company, Gen. Butterfield, its receiver, Root, and his Harlem Extension Railroad South Coal Transportation Company, Sackett alleging that he owned bonds of the original $2,000,000 mortgage to the amount of $8,700; that the purchase by Hull and Lincoln and their mortgage to Park and Duncan was for the benefit of the bondholders under the original mortgage; and in his complaint he pro-

fessed to bring his suit on the behalf of those bondholders. He, however, made parties only the above. It is also declared by the judgment that one Tilden was associated with Sackett in that action. The New York, Boston & Montreal Railway Company and Gen. Butterfield, its receiver, made default. Root and his Harlem Extension Railroad South Coal Transportation Company put in an answer, in which they did not allege any facts which showed that they had any interest in or right to the possession of the railroad. Sackett then moved for a receiver, and one Van Valkenburgh was appointed. Van Valkenburgh applied for leave to issue certificates, and the court authorized him to issue them to the amount of $350,000. Sackett and Tilden then presented claims, which, if valid, were behind the mortgage, to the amount of about $28,000,—Sackett, $3,997.80; Tilden, $23,967.37. They were paid by the receiver. In October, 1884, a trial was had, which resulted in a judgment by which a sale of the road was directed to be made, subject to the principal of the receiver's certificates. The interest upon the certificates then due was directed to be paid out of the purchase money. Under this judgment the road was sold, after June of the year 1885, to defendants Foster and Hazard, for $155,000. It is also declared that Van Valkenburgh realized upon his $350,000 of certificates $236,500, and no more; that out of this amount he paid out $115,784.41, in the above claims, counsel fees, interest on the certificates, and to himself. The entire sum of $155,000, realized by the sale, was absorbed by the interest on the certificates then due, and the accumulated debts of the receivership, and the sum was made up in advance with that view. The interest of 1886 upon the certificates not having been paid, the Central National Bank, a large certificate holder, brought an action against the defendants Hazard and Foster and another railroad company to which they had conveyed the railroad. That action was removed to the circuit court of the United States, and resulted in a decree in March, 1887, which directed the sale of the road, and that Hazard and Foster should pay any deficiency. The action was brought by the Central Bank in behalf of all other certificate holders, as well as itself. The officer of the United States court immediately advertised the road for sale, and has kept the sale adjourned from time to time until now. This is the sale which the injunction complained of relates to, all the parties to that action being parties to this. The present action was begun in April, 1887, and the road has been in the possession of the court, by its receiver, since shortly after its commencement. It is brought by other bondholders under the same mortgage, and the Union Trust Company is a party. The judgment complained of was entered on the 12th of November, 1891. It adjudges that the foreclosure judgment and decree of 1872 be now enforced; that the $5,000,000 mortgage is held by Duncan and the administrator of Park, impressed with a trust for the benefit of the Union Trust Company, as trustee under the original mortgage; that the judgment and all the proceedings in Sackett's suit, including the sale to Hazard and Foster, and the referee's deed to them, be reviewed and reversed, set aside and vacated. It directs the sale of the road, the proceeds to go to the original bondholders, except that the proceeds coming to bonds, the owners of which were actually concerned in Sackett's suit, are to go to the receiver's certificates; and it directs a reference to ascertain which and how many bonds were owned by persons who were so concerned in Sackett's suit. Among other provisions, it perpetually enjoins everybody from doing anything to affect the property or interfere with its sale, and, as a part of this, it enjoins all the parties to the suit from proceeding with the sale advertised under the decree of the circuit court of the United States. This latter provision is the one complained of.

The opinion of Mr. Justice PUTNAM, at special term, is as follows:

The facts on the second trial being substantially the same as on the first, in directing judgment herein, I based my conclusion on the holding of the general term, (11 N. Y. Supp. 268,) feeling bound to follow that court. If the question in the case had not already been passed upon by the appellate tribunal, I might have reached a different conclusion; but, of course, the opinion of the general term on the same state of facts concluded me. The

effect of my decision, therefore, was to carry out the judgment of the general term, and hence to determine, in reference to the Sackett suit, that "such an an action, thus instituted, controlled, and resulting, cannot be upheld. It was not a representative suit in fact. If it was such in form and regularity, then it is effectually impeached for fraud. The plaintiffs are * * * entitled to relief substantially the same as if the Sackett action had never existed. They were in no sense parties to that action, and, therefore, their rights remain untouched. It is said they are bound by the receiver's certificates, which were declared to be a first lien upon the property. This cannot be so without a violation of constitutional protection. The court acquires jurisdiction of the parties and of the subject-matter before it, but, from the nature of the case, can only acquire jurisdiction of so much of the subject-matter as all the parties before it hold. * * * 'Those who take receivers' certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not been, but should have been, brought before the court.' * * * The Central National Bank of Boston, a large holder of these certificates, as plaintiff, for itself and all other certificate holders, brought an action against Hazard and Foster, the purchasers of the railroad, upon the sale of the Sackett suit, and against the New York, Rutland & Montreal Railway Company, to which company Hazard & Foster conveyed the road, and against the American Loan & Trust Company, trustees of mortgage bonds issued by said railroad company. Judgment was obtained against said defendants, establishing the bank's ownership of its certificates and their lien upon the railway, and providing for the sale of the railway to pay the plaintiff and such other as should come in and establish their ownership. Such a judgment is good against the defendants in that action. They derive title to the railroad under the Sackett sale, which preferred the certificates. It is not binding upon the plaintiffs."[1] In pursuance of the decision of the appellate court, I therefore found that the plaintiffs were entitled to a judgment providing that the Sackett judgment and all the proceedings in that action, including the sale and the deed by the referee to the defendants Hazard and Foster, be reviewed and reversed, and all the property and franchises described in the complaint, together with all the interest therein of all the parties to this suit and all the Lebanon Springs & Harlem Extension bondholders, be sold for the purposes above stated; also holding that the holders of the certificates issued in the Sackett suit by the receiver, Van Valkenburgh, are entitled to such proceeds of the sale as shall belong to those Lebanon Springs bonds which were in the trial and judgment in the Sackett suit represented.

In this discussion we must assume that my conclusions and findings, based, as they are, on the authority of the appellate court, as to the Sackett suit, are correct, and that the Sackett judgment and sale thereunder were properly set aside. Having reached the conclusion, then, that the Sackett suit was fraudulent, and not a representative action, and that the sale thereunder should be vacated and set aside, and that the certificates issued in said action are, as to the plaintiffs, invalid, and not enforceable, and that there must be a new sale of the property under the judgment in this action, it remains to be seen whether the defendant the Central National Bank of Boston should be allowed to proceed with the sale under the certificates issued in the Sackett suit under the judgment in the circuit court of the United States. Bank v. Hazard, 30 Fed. Rep. 484. For what purpose? The sale under the judgment in that action could convey no title. It must be subject to and overreached by the sale directed by the judgment herein; yet, being made subsequent to said last-named judgment, the effect would necessarily be to cast a cloud upon the title, and to embarrass the subsequent sale to be made in this action. The judgment in the United States court cannot be interfered with as far as to determine the right of the Central National Bank to recover the proceeds of the bonds represented in the Sackett suit, as against the defendants in the federal action. On the sale in this action the bank will receive the proceeds of the bonds represented in the Sackett suit, which

See 11 N. Y. Supp. 276, 277.

would go otherwise to the bondholders. On the sale so to be made, it is to be presumed that the property will bring as high a price, if not higher, as on the sale under the United States judgment; and hence defendants will, in fact, receive the same proceeds as under the sale in the federal action. Why, then, should the property be sold in that action, such sale being necessarily overreached by the sale to be made herein, and conveying no title? What would be the effect of such a sale? The general term holds that the certificates are void as to plaintiffs and all bondholders not represented in the Sackett suit; that the judgment in the federal action is not binding on such bondholders; that plaintiffs are entitled to relief, the same as if the Sackett suit had never existed; that is, a judgment of foreclosure and sale under which a title to the road can be given. What, then, would be the effect of a sale under the federal judgment in favor of the bank? As stated, such a sale would not give any title to the property. At the most, it would convey to the purchasers the interest of the certificate holders who have acquired the interest of the bondholders represented in and assenting to the Sackett action, and who are also represented in the federal action. But what bondholders? As held by the general term, there must be an identification of those bondholders who held aloof from the Sackett suit, for such are not bound by any proceedings therein, and are entitled to the benefit of this action. Therefore, if there is a sale under the federal judgment, its only effect will be to transfer to the purchasers the interest of the certificate holders representing the bondholders who were represented in the Sackett action to the proceeds of the sale in this action. But such interest is already preserved and taken care of by the judgment herein. Under the judgment entered in this action under the direction of the appellate court, there can be no sale under the federal judgment; that is, a sale that will transfer any title to the purchasers. For the above and various other reasons not necessary to be stated, I think that the clause in the judgment restraining the sale under the federal judgment should be retained. If the bank has a claim against Hazard and Foster, the purchasers on the sale under the Sackett judgment, for any deficiency, after the judgment in this action setting aside the Sackett judgment and sale, I think they may recover such deficiency, as well if the property is sold pursuant to the judgment herein as if sold under the federal judgment.

It is suggested, however, that the state court cannot enjoin parties from proceeding in the United States court in an action or under judgment therein. There are statements in various authorities that would seem to sustain that position. Thus, in 2 Story, Eq. Jur. § 900, the author says, referring to the power of the chancery court to restrain parties within its jurisdiction from proceeding in foreign courts in certain cases: "There is one exception to this doctrine which has long been recognized in America, and that is that state courts cannot enjoin proceedings in the courts of the United States, nor the latter in the former courts." Chancellor Walworth, also, in Mead v. Merritt, 2 Paige, 402, says: "Although the court has the physical power to act coercively on a party within its jurisdiction to the same extent, it has frequently decided that it would not sustain an injunction restraining a suit or proceeding previously commenced in a court of a sister state, or in any of the federal courts. The same principle has been adopted by the supreme court of the United States." Diggs v. Wolcott, 4 Cranch. 179; McKim v. Voorhies, 7 Cranch, 279. "I am not aware that any court of equity in the Union has deliberately decided that it will exercise the power, by process of injunction, or restraining proceedings which have been previously commenced in the courts of another state." To the same effect is the case of Rio Grande R. Co. v. Gomila, 132 U. S. 483, 10 Sup. Ct. Rep. 155, the other case cited by defendant. See Schuyler v. Pelissier, 3 Edw. Ch. 191; Coster v. Griswold, 4 Edw. Ch. 376.

On the other hand, in Dinsmore v. Neresheimer, 32 Hun, 206, the general term of the first district enunciates this doctrine: "The principle has been regarded and stated as elementary in its character that a court of equity should interfere, when sufficient equitable reasons are presented for so doing, to restrain the prosecution of an unconscionable action, although it may be

pending in the courts of another state or country. Story, Eq. Jur. § 809. This may be done without interfering with the proceedings themselves, by controlling the conduct of the parties, when they are subject to the jurisdiction of the court so interposing for the prevention of injustice." In that action an injunction was granted to restrain the prosecution of an action in the supreme court of the District of Columbia, sufficient equitable grounds existing therefor. In Dehon v. Foster, 4 Allen, 550, the court remarked: "The authority of this court, as a court of chancery, upon a proper case being made, to restrain persons within its jurisdiction from prosecuting suits either in the courts of this state or of other states or foreign countries, is clear and undisputable. In the execution of this power, courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties, when drawn in controversy and duly presented for their determination, but the jurisdiction is founded on the clear authority vested in the courts of equity over persons within the limits of their jurisdiction, and amenable to process, to restrain them from doing acts which will work an injury to others, and are therefore contrary to equity and good conscience. As the decree of the court in such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is presenting his action in the courts of a foreign state or country." This case was followed in Vail v. Knapp, 49 Barb. 308, 309; Claflin v. Hamlin, 62 How. Pr. 284. In Town of Thompson v. Norris, 11 Abb. N. C. 171, 172, Justice Learned intimates that there may be exceptional cases where an injunction would lie restraining the prosecution of an action in the United States courts. See, also, Burgess v. Smith, 2 Barb. Ch. 280, where Chancellor Walworth intimates that in a very special case the rule of comity forbidding the granting of an injunction to stay proceedings in a court of competent jurisdiction of a sister state might not be followed. In Barry v. Brune, 8 Hun, 395, 71 N. Y. 261, an action was commenced to collect an insurance policy, and to restrain the enforcement of a judgment obtained by the defendant, Brune, in the federal court, as assignee of the policy of insurance. Plaintiff obtained a judgment for the amount of the policy, and a perpetual injunction against the defendant restraining the enforcement of the United States judgment. This case would seem to determine that, in a special case, parties might be enjoined from proceeding in the courts of the United States. In People v. Erie Ry. Co., 36 How. Pr. 132, the defendant was enjoined from delivering its property to a receiver appointed by a United States district court. See, also, Bowers v. Durant, 43 Hun, 348; Garrison Case, 1 How. Pr. (N. S.) 352; Kittle Case, 8 Daly, 72; Hayes v. Ward, 4 Johns. Ch. 122.

If the judgment of the Central National Bank on the certificates had been in the supreme court of the state, being so obtained on certificates issued in an action held to be fraudulent, and the judgment and proceedings in which are, so to speak, "wiped out" by the judgment in this action, it would be hardly claimed that a sale on the foreclosure of said certificates, which would convey no title, and which would necessarily cast a cloud upon the title of the property under the sale in this action, should be allowed to proceed. There are cases which hold that, where the jurisdiction of the United States is derived from the citizenship of the parties, no higher sanctity or effect can be claimed for a judgment of a circuit court of the United States than is due to judgments of the state courts in a like case and under similar circumstances. See Dupasseur v. Rochereau, 21 Wall. 135; Crescent City Live-Stock Co. v. Butchers' Union Slaughter-House Co., 120 U. S. 147, 7 Sup. Ct. Rep. 472. If the doctrine as enunciated in these cases is correct, then the court could as well enjoin the parties from proceeding to a sale on the judgment in the federal court in favor of the Central National Bank as if that judgment had been rendered in the supreme court of this state; especially in a case like this, where the action was commenced in the courts of this state, and only removed to the courts of the United States because of the citizenship of the parties.

With some hesitation I have reached the conclusion, under the authority of the cases above cited, that in some cases this court, as a court of equity, by its judgment, may restrain parties from proceeding in the federal courts, equity demanding such a judgment. It is true that ordinarily parties in an action in a state court will not be enjoined from proceeding in the action in the courts of the United States. This is the usual rule. It may be said to be the rule. But there are exceptions to the rule, as held in the authorities hereinbefore cited. In 1 High on Injunctions, (page 92, note to section 111, the author, referring to the dicta in U. S. v. Keokuk, 6 Wall. 514, says: "While the doctrine as thus stated is undoubtedly true as regards any effort on the part of a state or federal court to operate by injunction upon the process of any other tribunal, state or national, it should be borne in mind that courts of equity, in the exercise of their extraordinary powers by injunction, have never assumed to enjoin the court itself, but only to arrest the action of the parties litigant, and this in the exercise of a jurisdiction strictly in personam." Probably the state courts cannot enjoin proceedings in a federal court, nor can a state court ordinarily enjoin parties from proceeding in a federal action, but there are exceptional cases where the parties may be so restrained. The cases cited by defendant, I think, are not quite similar to this. In Riggs v. Johnson Co., 6 Wall. 166, an injunction was issued by a state court to stay proceedings on a judgment duly rendered in a United States court, on the ground that the coupon bonds upon which the judgment was obtained were void under the holding of the state court, the federal court having held them valid. In fact, by the action in which the injunction was issued, the state attempted to reverse and set aside the holding of the United States court on questions of law involved in the case; and the court held "that the injunction of a state court is inoperative to control, or in any manner affect, the process or proceedings of the circuit court." It will be perceived that the action of the state court in that case was in direct conflict with the United States court. The cases of U. S. v. Keokuk, 6 Wall. 514; Mayor, etc., v. Lord, 9 Wall. 409; Supervisors v. Durand, Id. 415,—are similar to that of Riggs v. Johnson Co., supra, and very clearly not like this case. In Railroad Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. Rep. 155, the property of the debtor had been seized under execution on a judgment obtained of the federal court, and it was held that probate laws of the state would not take the property from the hands of the marshal. The court held that it would have been different had there not been any seizure under the United States judgment. Pages 484, 485, 132 U. S., and page 157, 10 Sup. Ct. Rep. Of course, such a decision follows the doctrine that the proceedings in the courts of the United States cannot be interfered with by the state courts; the court, then, through its officers, being in the actual possession of the property. The case of Amy v. Supervisors, 11 Wall. 136, is similar to that of Riggs v. Johnson Co., supra. In McKim v. Voorhies, 7 Cranch, 279, it is held that the state court has no jurisdiction to enjoin a judgment in the circuit court of the United States. In that case the state court attempted to enjoin all proceedings in a judgment of ejectment obtained in the federal court, thus restraining proceedings on the judgment, not the party.

I think that no injunction should be granted by state courts restraining the enforcement by parties of a federal judgment where the effect of such injunction is to raise a conflict with the federal court. Neither, probably, can proceedings in the federal courts be enjoined by a state court. But authorities above cited seem to hold that, in certain exceptional cases, parties to an action in a state court may be enjoined from taking any proceedings under a judgment in a federal court. Although the doctrine enunciated in some cases cited by defendant, if taken literally, seems different, yet such doctrine, in each of such cases, was stated in reference to the facts of the case before the court, which, as we have seen, were very different from those in this case. In this action the authority to issue the certificates under which the Central National Bank is proceeding in the federal court is an order made in the supreme court of this state in the Sackett suit. The same court in which the Sackett order was entered now vacates and sets aside, as it lawfully may, the Sackett judgment and sale, and all proceedings in that action, except as far as it determines the rights of the Central National Bank and Hazard

and Foster and their grantees, as against parties represented in that action, to the proceeds of the bonds held by parties so represented. The supreme court, therefore, on setting aside the proceedings in the action under which the Central National Bank received its certificates, may properly restrain, by injunction, that bank from proceeding upon the judgment it obtained upon such certificates. That bank is striving to enforce certificates issued by the supreme court of this state, which that court now adjudges void. It is proper for that court to prevent the bank from selling under a judgment upon the void certificates, which sale would give no title, and tend to cast a cloud upon the title of the property to be derived under the sale herein. Such action of the state court is not at all in conflict with the holding of the federal court. The judgment obtained in that court was in the action by the Central National Bank against Hazard and Foster, their grantees, and the American Loan & Trust Company, as subsequent mortgagees. Said judgment was based on the validity of the Sackett suit and judgment. The question as to whether that was a representative action or a fraudulent one was not involved. The only question in the federal court was, were the certificates issued pursuant to the order of the state court in the Sackett suit, and was the plaintiff the owner of such certificates? No question raised in this action was involved in that. The judgment in this action raises no issue with the federal court. That judgment was to enforce the certificates of this court, which the court now vacates, with the proceedings and judgment in the action in which they were issued. Hence, this case is one where, in the language of the counsel for the defendant, "something has arisen since the rendition of the federal judgment to render its enforcement inequitable." It is true that the judgment of the federal court has not been reversed; but the certificates on which that decree was based by the judgment entered in this action, and hence since the federal judgment was obtained, with the proceedings in that action, "wiped out." Since the federal judgment, a judgment has been duly entered in the state court, that avoids, as against the plaintiff and parties to this action, the certificates on which the federal judgment was based, and renders a sale thereunder inequitable and ineffectual to convey any title. In fact, in my opinion, the effect of the judgment for the resale of the property, and the vacating the decree and sale thereunder, in the Sackett suit, renders an injunction of the sale under the certificates issued in the Sackett suit not only proper, but necessary. If this court cannot award such an injunction, it could not render the judgment given in this case. Such an injunction is a part of the relief the plaintiff is entitled to, if entitled to any judgment. To vacate the Sackett judgment and sale and proceedings on the ground that the action was not a representative one, or was fraudulently conducted, and yet to allow, under certificates issued in that action, defendant to sell the property, would not be reasonable or proper. I think, therefore, that the motion should not be granted. I presume that no order is necessary to be entered. The matters discussed on this motion might properly have been discussed before the rendition of judgment, and hence no costs should be allowed.

As to the $2,000 allowance to the plaintiffs, I thought, considering the amount involved and the necessary labor in the case, that such allowance was not excessive; but, of course, if desired, the parties should be heard in the matter, and I am willing to hear any suggestion in that regard. Possibly other parties are entitled to some allowance.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Campbell & Paige, (E. W. Paige, of counsel,) for appellants.
Hale & Bulkeley, (Matthew Hale, of counsel,) for respondents.

HERRICK, J. This is an appeal from an order denying a motion to strike out the clause in the decision in the above-entitled action directing judgment perpetually enjoining the sale in the suits by the Central National Bank of Boston et al. against de-

fendants Hazard, Foster, et al., in the United States circuit court,[1] and staying all their proceedings under the judgments rendered in said actions. The learned justice before whom such motion was made has given his reasons for denying the same in an elaborate opinion, in which I concur. I can see no reason for writing an-other one. The order appealed from should be affirmed, with costs and disbursements. All concur.

[1] See 30 Fed. Rep. 484; 49 Fed. Rep. 293.