Torlotting v. Torlotting.

---

MINA TORLOTTING, Appellant, v. MICHAEL TORLOTTING, Respondent.

**St. Louis Court of Appeals, December 9, 1902.**

1. **Divorce: CRUEL TREATMENT: EVIDENCE: CROSS-BILL.** In an action for divorce, tried on evidence raised by defendant's cross-bill charging cruel treatment in shooting at him several times, one ball passing through his body, in which his wife claimed that she did not know him at the time of shooting, though it was broad daylight, and they had lived together twenty-eight years, and he spoke to her, and immediately after the shooting she said she was sorry she had not killed him; evidence examined and *held* that a judgment of divorce in defendant's favor was justified.

2. ———: ———: ———: FORMER SUIT: BAR TO ACTION. In a suit for divorce by a husband against his wife on the ground of adultery, the evidence tended to show that if she had committed the act he had connived at the adulterous intercourse by arranging for the time and place where the act was committed, and for that reason he was not entitled to divorce. Afterwards she sued for divorce, and he filed a cross-bill alleging cruelty since the termination of the first suit: *Held,* that the decision in the first case was no bar to the second suit, providing his conduct had since been of an exemplary character.

3. ———: ———: ———: ———: TRESPASS. Where after a husband and wife had separated she continued to live in his house with their two minor children, and a bill was sent to him for some plumbshe had had done, he was not a trespasser in going to the house to examine the work before paying the bill.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Bass & Brock* and *H. A. Loevy* for appellant.

(1) *Volenti non fit injuria.* Respondent was alone to blame. But for his unauthorized entry into the house without knocking he would not have been shot at. Doyle v. Doyle, 26 Mo. App. 545. (2) Respondent was a trespasser and must take the consequences. Denver v. Harris, 122 U. S. 597; Westcott v. Arbuckle, 12 Ill. App. 577; Sampson v. Henry, 11 Pick. (Mass.) 379. The house was appellant's castle and she had the right to resist his entry if she was alarmed or afraid of injury to the house or assault on her person. 1 Bishop New Crim. Law, 1892, par. 858; State v. Kennade, 121 Mo. 414; State v. Reed, 154 Mo. 129; State v. Taylor, 143 Mo. 150. Even if it afterwards appears that there was no occasion for her resistance or resort to arms. Morgan v. Durfee, 69 Mo. 477; Nichols v. Winfrey, 79 Mo. 544, 547; 90 Mo. 403, 406, Ib.

*Jesse A. McDonald* for respondent.

(1) A single act of gross cruelty is sufficient cause for a divorce. A deliberate and unprovoked attempt by one upon the life of the other surely warrants a dissolution of their marriage. Doyle v. Doyle, 26 Mo. 545; 1 Nelson on Div. and Sep., sec. 268; Huilker v. Huilker, 64 Tex. 1; Beyer v. Beyer, 50 Wis. 254. (2) The appellate courts pay great deference in divorce cases to the findings of facts by the trial courts, which see the witnesses and observe their demeanor, and if the findings are supported by a preponderance of the evidence, they will be upheld. Miller v. Miller, 14 Mo. App. 424; Owens v. Owens, 48 Mo. App. 212; Griesedeick v. Griesedeick, 56 Mo. App. 94; Rawlins v. Rawlins, 102 Mo. 563.

BLAND, P. J.—Plaintiff, on February 26, 1902, filed a petition in the circuit court for a divorce in which

she alleged thirteen good and substantial grounds therefor. On May 5, 1902, defendant filed his answer and cross-bill. In his cross-bill defendant alleged a dozen or more good grounds for a divorce from plaintiff.

The evidence on the trial was all directed to the proof of but one of the causes for a divorce in the cross-bill, to-wit, "that on August 14, 1899, plaintiff without cause or excuse fired four shots at defendant while he was running away from her in an attempt to escape danger, and that one of the balls so discharged at defendant by plaintiff passed through his body and inflicted a wound from which he was confined to his room for several weeks."

For answer to the cross-bill plaintiff filed a general denial and the following special plea:

"That all the allegations and charges set forth in cross-bill were either set forth in his said petition for divorce hereinbefore referred to or existing at the time he filed his said petition for divorce and could have been included by him in his said petition as reasons and causes entitling him to a divorce; that by decree of the St. Louis Court of Appeals which finally disposed of the said petition and suit and all the charges therein made by defendant against plaintiff all the said matters and issues set forth in the said petition and those which existed at that time and were not set forth in said petition and which are now set forth by defendant in his cross-bill herein, have become determined and adjudicated against defendant herein and he should not now be heard to plead and maintain the same.

"Plaintiff admits that on August 14, 1899, she shot at defendant and states that she fired at him because he was trying to forcibly enter her room. That at defendant's instance a warrant was issued for plaintiff's arrest by the St. Louis Court of Criminal Correction for the alleged offense of so shooting at defendant, and that upon a trial of said charge plaintiff was acquitted and discharged by said court."

The reply to the answer to the cross-bill admitted the former adjudication.

A rule was made on plaintiff to furnish security for costs. She failed to comply with this rule and her petition was dismissed. No exceptions were saved to this ruling and the cause was tried on the cross-bill, the answer thereto and defendant's reply.

After hearing the evidence the court awarded a decree of divorce in favor of defendant from which, after an unsuccessful motion for new trial, plaintiff appealed.

The evidence is, that in October, 1898, plaintiff and defendant separated and have not lived together as man and wife since that date. Prior to the bringing of the present suit the defendant unsuccessfully prosecuted a suit against his wife (plaintiff herein) for a divorce to a final determination in this court (Torlotting v. Torlotting, 82 Mo. App. 192). On the trial of the present case the court confined the evidence, in respect to the conduct of plaintiff, to what had occurred since the final termination of the former suit.

The evidence is, that the parties were married in 1871, and that they had five children, all of whom are of age except two; that defendant owned a residence on Dickson street, in the city of St. Louis, where he and his wife had resided prior to the separation and where, after the separation, his wife continued to reside with the two minor children; that in August, 1899, plaintiff had had some plumbing work done on the premises and the bill was presented by the plumber to defendant for payment. He testified that after this bill was presented to him, and on the fourteenth day of August, he went to the premises with the view of inspecting the property before paying the bill; that when he arrived at the house he found all the doors closed and the outside blinds to the windows closed with the exception of one in the kitchen immediately over the sink where the plumbing work had been done; that the lower sash of this window was up and that there was a wire screen in the window; that he saw a little girl in the yard and asked her if there was any one in the house or at home and she told him she thought not; that he then went to the window

that was open and raised the wire screen for the purpose of seeing the plumbing work; that as soon as he had raised the same and stuck his head in the window a shot was fired at him by his wife from the door; that he then ran out at the yard gate and his wife ran after him and fired two shots at him one of which struck him near the hip and passed through his body.

Other witnesses, who saw the transaction or a part of it, testified that the defendant ran down the street after getting out through the gate and that his wife ran to the gate and shot at him as he ran.

Defendant testified that while his wife was shooting at him he turned towards her and called her a vile name; that his only purpose in going to the premises was to look after the plumbing work and see if he could not find some of his clothes that he thought might be in a shed near the house.

The shooting was done in broad daylight.

A short time after the shooting plaintiff was arrested and taken to the police station. Her son followed her with a view of making arrangements to have her bailed out. In a conversation with him at the station she stated to him that "she was sorry that she didn't kill him and end all the troubles." This same witness testified that his mother had made threats prior to this that she would kill the defendant.

Plaintiff testified that she was in her room sewing; that the outside shutters to all the windows were closed except the one in the kitchen; that the sash to that window was down and there was a wire screen in it; that she heard the sash raised and listened for a moment and heard someone trying to get in the window; that she got the pistol and went to the door leading from the dining room to the kitchen and as she opened it she saw a man with one leg in the window, his foot on the sink and his body about half way in the window; that she did not see enough of him to know who he was and that she fired at him and he ran; that she went out after him as far as the gate and fired two or three shots; that she

did not know it was the defendant she was shooting at until after the shooting was done.

She introduced witnesses, for whom she had worked and who visited her house very frequently, who testified that her conduct since the disposal of the former divorce suit had been in every respect correct and lady-like.

In the former suit the charge against the plaintiff was that she had been guilty of adultery. The evidence in that case tended to show that if she had committed the adulterous act her husband had, by arranging for the time and place where the act might be committed, connived at the adulterous intercourse and for that reason was not entitled to a divorce, and the decision in that case should have no influence in the determination of this one, providing the conduct of the defendant has since been of an exemplary character and the evidence shows that he has not been guilty of any act or acts which would deprive him of the right of divorce on account of the cruel treatment he received at the hands of his wife on August 14, 1899.

There is no evidence in the record of any communication whatever between defendant and his wife since the termination of the former suit until the happenings on August 14.

It is contended by plaintiff that defendant was guilty of a trespass in going upon the premises and undertaking to enter them through the window. We doubt if the evidence makes out proof of a trespass. The premises were defendant's. As far as the evidence discloses his wife was remaining there by his permission. The object for which he visited the premises was a legitimate one, to-wit, to ascertain whether or not the plumbing work had been properly done for which he was called on to pay. His evidence further shows that had he known or suspected that the plaintiff was in the house at the time he would not have undertaken to look in at the window or enter the premises for the reason, as he stated, that she had threatened to shoot him and

Torlotting v. Torlotting.

he was afraid that she might do so if she had the opportunity.

The evidence of the plaintiff that she did not know at whom she was shooting is hardly creditable and can not be given much weight in view of the fact that she did know, before the defendant had gotten beyond hearing, that it was the defendant she had shot and she said nothing. What she stated to her son in a very short time after the shooting that "she was sorry that she didn't kill him and end all the troubles," is inconsistent with her evidence that she did not know that it was her husband at whom she was shooting. Her previous threats to kill him if she had an opportunity, and her expression of regret that she had not killed him when the opportunity was offered, and her long acquaintance with the defendant by having lived with him for twenty-eight years as his wife, makes it extremely improbable that she did not know, the moment she cast her eyes upon the defendant, who he was, and we think the evidence shows beyond any peradventure that, without cause, she willfully and deliberately fired at him with an intent to kill. It is useless to say that such conduct is cruel and inhuman and entitled defendant to a divorce.

There being nothing in the record which shows or tends to show that defendant had been guilty of any misconduct since he brought the former suit for a divorce, we affirm the judgment. *Barclay* and *Goode, JJ.,* concur.