HERMAN H. LIBBE, Respondent, v. ESTELLA A. LIBBE, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. DIVORCE: Burden of Proof: Mutual Marital Duty. The burden is on the plaintiff in a divorce suit to show not only that he was injured by guilt of his spouse recognized in law as a ground for divorce, but that he was innocent of wrong doing of a nature to constitute a breach of marital duty. The legal standard for measuring both parties is the same. Either husband or wife, to obtain relief, must come into court with clean hands.

2. ———: Alimony and Suit Money: Original Jurisdiction: Circuit Court. In an action for divorce, where no appeal was taken from the judgment of the circuit court disallowing allimony and suit money, there is nothing before the appellate court for review except the judgment awarding a divorce to plaintiff, and giving him custody of the child. Hence, even though the appellate court may think that the circuit court erred in not making suitable provisions for the support of defendant, and the child, and for the prosecution of the appeal, it must nevertheless overrule defendant's motion, for the reason that appellate courts have no jurisdiction to make allowances of alimony or suit money pending the appeal, original jurisdiction being vested alone in the circuit court.

Appeal from Buchanan Circuit Court.—*Hon. Lucian J. Eastin,* Judge.

REVERSED AND REMANDED.

*John S. Boyer* and *Charles C. Crow* for appellant.

(1)   The ground for divorce alleged by plaintiff in this case was adultery, committed by the mother of the plaintiff's son, for whom he pretends to have such great affection. The alleged evidence of the conduct of Mrs. Libbe is thoroughly unreliable, and in face of the denial of the defendant, with all of the circumstances and other evidence, tending to corroborate her, this court will not find the defendant guilty, because the plaintiff has not brought himself within the rule of law, requiring proof of such an act, which not only blackens  her name, but the  name  of her son.

Mahn v. Mahn, 70 Mo. App. 337; 14 Cyc. p. 698, cases cited; Burke v. Burke, 44 Kan. 307; Aitchison v. Aitchison, 99 Iowa 93; Keville v. Keville, 106 N. Y. S. 993; 9 Am. and Eng. Ency. Law pp. 749, 750 *et seq.;* 2 Bishop on Marriage, Divorce and Separation, sec. 1350.  (1)  The plaintiff being in a court of equity must not only come with clean hands, but must prove affirmatively that he was the innocent and injured party, and that he performed all his marital duties to the defendant before a divorce can be awarded him, and a reading of this record will clearly demonstrate that there is not one scintilla of evidence in the case tending in the slightest degree to prove that plaintiff performed his marital duties or that he was in a court of equity with clean hands, or that he was the innocent and injured party.  Reed v. Reed, 39 Mo. App. 473; Torlotting v. Torlotting, 8 Mo. App. 192; Lawlor v. Lawlor, 76 Mo. App. 637; Miles v. Miles, 137 Mo. App. 38.  (3)  It is the duty of this court to award defendant alimony pending the suit, since the trial, suit money to pay expenses of trial, and reasonable attorney fees for services performed in representing the defendant, and we ask that the cause be reversed, a commissioner appointed to take testimony on these allowances, or that the trial court be instructed to hear and determine what allowances should be made. Viertel v. Viertel, 99 Mo. App. 710; Rosenfeld v. Stix, 67 Mo. App. 583.

*Allen, Gabbert, Mitchell & Martin* for respondent.

(1)  In a divorce case, where the evidence is conflicting, the findings of the trial court will not be disturbed on appeal, unless manifest error is made to appear.  Munchow v. Munchow, 78 Mo. App. 99; Nichols v. Nichols, 39 Mo. App. 291; King v. King, 42 Mo. App. 454; Schierstein v. Schierstein, 68 Mo. App. 205; Maget v. Maget, 85 Mo. App. 6.  (2)  The affidavits in support of appellant's motion for new trial should be

wholly disregarded, as they did not meet the requirements of the law. The courts require the party filing the affidavits of newly discovered evidence in support of motion, for new trial to strictly conform to the following requisites before such motion or affidavits will be considered, to-wit: First, that the matters set up in the affidavits first came to her knowledge since the trial. State v. McLaughlin, 27 Mo. 112; State v. Ray, 53 Mo. 349; State v. Miller, 144 Mo. 30; State v. Speritus, 191 Mo. 41. Second, that it was not owing to lack of due diligence; nor ascribed to inattention or other fault of losing party that such information did not come sooner or was not discovered until after the trial, or that such information would not have been obtained by the exercise of due diligence and proper attention in preparing for and trying the case. Devoy v. Transit Co., 192 Mo. 217; Miller v. Whitson, 40 Mo. 103; Richardson v. Farmer, 36 Mo. 46; State v. McLaughlin, 27 Mo. 112. (3) The trial court had the right, and it was his duty, to deny suit money pending the appeal, if it was satisfied that the appeal was without merit. Adams v. Adams, 49 Mo. App. 592; Rosenfield v. Rosenfield, 63 Mo. App. 411; Dawson v. Dawson, 37 Mo. App. 207. (4) An order touching the award of suit money to a wife on appeal in a divorce case is largely within the discretion of the trail judge and will not be interfered with in appellate court unless it is made clearly to appear that such discretion has been abused. Fullhart v. Fullhart, 109 Mo. App. 708; Robertson v. Robertson, 137 Mo. App. 95; State ex rel. v. Seddon, 93 Mo. 523. (5) No appeal was taken from the order of the trial court refusing to award suit money for appeal, and no bill of exceptions filed therein. Therefore, this court has no jurisdiction to make an order or allowance for such suit money. State ex rel. v. Court of Appeals, 88 Mo. 135; Marx v. Marx, 94 Mo. App. 172; Dawson v. Dawson, 37 Mo. App. 207; Motley v. Motley, 93 Mo. App. 473.

JOHNSON, J.—Plaintiff brought this suit December 5, 1908, to obtain a divorce and the custody of his minor son, the only offspring of his marriage with defendant. The cause pleaded in the petition is adultery.

Defendant filed a crossbill in which she prayed for a divorce and the custody of the child on a number of grounds and also for alimony. After hearing the evidence the court dismissed the crossbill, granted plaintiff a divorce and awarded him the custody of the child, then a boy fourteen years of age. After defendant's motion for a new trial was overruled she filed her affidavit for appeal and an appeal was granted. She also filed a motion for alimony and suit money pending the appeal which the court overruled. After the cause reached this court defendant filed a motion for suit money with which to prosecute the appeal and this motion is now pending with the case.

Both plaintiff and defendant are of German parentage and have lived in St. Joseph during the period of their marital life. Plaintiff is a prosperous business man and enjoys the confidence of the business men of St. Joseph. He is fourteen years older than his wife who is the daughter of a Mr. Muehleisen, for many years a citizen of St. Joseph and, until recently, the business associate of plaintiff. The married life of the parties began in 1891 and continued tempestuously until about 1900 when they separated and plaintiff commenced a suit for divorce. Defendant filed a crossbill and prevailed at the trial where she was given a divorce and the custody of the child. Perhaps six months later a severe illness of plaintiff became the moving cause of a reconciliation between the parties and they resumed marital relations without a marriage ceremony. They lived together as man and wife, held themselves out to the world as such and were so regarded and treated by their friends and social intimates. They and their son lived together in a highly

Libbe v. Libbe.

respectable residence district in a style and manner suitable to their station in life and the expense of the establishment, as well as the usual family and personal expenses were defrayed by plaintiff. As to material things the boy was well cared for and, despite the evil atmosphere of his home (produced, we think by the fault of one parent as much as by the other), he has developed into a bright, clean, manly youth and now is in the first period of young manhood. Both parties and all of the witnesses who testified about him speak of him in terms of highest praise. He appears to be strongly attached to his mother who, notwithstanding her immoralities, always has bestowed on him the material benefits of a strong maternal instinct. In his testimony the boy showed respect and consideration for his father though he thinks the father is in the wrong and that he has no love for him or for his mother.

The attitude and testimony of the boy in whose voice we detect no note of malice or ill will and who impresses us as a youth of more than ordinary intelligence are very potent factors in influencing us to the belief that the mother has her good side and is not wholly depraved and that, on the other hand, the father cannot measure up to the standard of an injured and innocent husband who has always been faithful to his marital duties. Occasionally plaintiff and defendant talked of a formal marriage and in September, 1907, they went to Chicago to attend a convention and one day went on to Milwaukee, were married and returned to Chicago where they remained several days. Their vacation ended in a bitter quarrel. Plaintiff announced his purpose of making a business trip to a city in Wisconsin and insisted that defendant return home alone. Defendant was jealous of a young woman who lived in Kalamazoo and had paid them a visit at their home in St. Joseph, and, with what

157 App.—45

seems to us good reason, charged defendant with the intention of pursuing illicit desires he had manifested towards the young woman at St. Joseph and which had not been seriously repulsed. Plaintiff denied the charge and refused defendant's request that she be allowed to accompany him on the ground that he did not have money enough to take her. They separated in anger and, guided by her suspicions, defendant went to Kalamazoo in the vain hope of interfering in the intrigue. Failing to meet her husband there she returned to St. Joseph and, a few hours later, plaintiff came home. The quarrel was renewed and ended by plaintiff gathering up a few of his personal belongings and leaving home with the avowed intention of separating from defendant. Since then the parties have not lived together and plaintiff began spying on his wife for the purpose of discovering her infidelity. The evidence adduced by him convinces us, as it did the learned trial judge, that repeatedly defendant visited places of ill repute in St. Joseph and Kansas City for immoral purposes and if we could believe plaintiff innocent of wrongdoing we would affirm the judgment. In divorce as in equity causes appellate courts, appreciating the advantages enjoyed by the trial judge who has the parties and witnesses before him, show deference to his findings of fact and where the evidence is conflicting and evenly balanced, do not disturb his findings. [Munchow v. Munchow, 78 Mo. App. 99; Nichols v. Nichols, 39 Mo. App. 291; King v. King, 42 Mo. App. 454; Maget v. Maget, 85 Mo. App. 6.] But the appellate court will weigh evidence for itself and, when convinced that a conclusion of fact entertained by the trial court is not supported by the weight of the evidence, will reject such conclusions and give effect to those it deems consistent with all the evidence. [Torlotting v. Torlotting, 82 Mo. App. 192; Lawlor v. Lawlor, 76 Mo. App. 637; State ex rel. v. Court of Appeals, 99 Mo. 216; Funding v. Foun-

Libbe v. Libbe.

dry Co. v. Haskett, 125 Mo. App. 516; Bank v. Nichols, 202 Mo. l. c. 320; Bank v. Fry, 216 Mo. l. c. 46.]

The burden is on the plaintiff in a divorce suit to show not only that he was injured by guilt of his spouse recognized in law as a ground for divorce but that he was innocent of wrongdoing of a nature to constitute a breach of marital duty. And the legal standard for measuring the conduct of husband and wife is the same. There is not one rule for the husband and another for the wife. Either husband or wife to obtain relief from bonds that have grown too burdensome must come into court with clean hands. In reaching the conclusion that plaintiff is not innocent we are giving due weight to his character witnesses most of whom are business men who knew plaintiff only through business intercourse. But a man may enjoy a fine reputation in the business world and still be a bad man in his home life and evidence of business reputation should not be accorded predominant weight in spheres not covered by the sources of such reputation. The testimony of plaintiff shows him in a bad light. Thinking it important to controvert the theory of defendant that during the years they lived together before the last marriage a common law marriage existed, plaintiff testified: "Q. And you thought you were living there in illicit relations with a woman in the presence of your boy? A. Yes, sir. Q. You continued that for a number of years? A. Yes, sir."

Further his testimony when read in the light of all the evidence discloses that he not only was addicted to drunkenness but that he indulged in drunken orgies with boon companions at his home in the presence of his son. True defendant joined in these bouts but that does not excuse plaintiff from the imputation of polluting his own fireside. He is much older than his wife and should have exerted his influence to maintain his home as a reasonably respectable and decent place for the rearing of his child. Some of the persons he

and his wife entertained and associated with were men and women of bad reputation. Plaintiff was quarrelsome and abusive in his home and frequently used profane and indecent language in quarreling with his wife in the presence of the boy. On one occasion a few months before the final separation he struck her as hard as he could. This he admits and seeks to extenuate the act by saying she provoked him by calling him a vile name. No husband who strikes his wife in anger and not in the necessary defense of his person should be deemed an innocent and injured spouse. American manhood abhors the wife-beater and by his act plaintiff grossly offended the dignity and proprieties of the marital relation.

And, finally, we believe plaintiff was guilty of sexual immorality. We concede the evidence of such culpability is not as specific as that accusing defendant but none the less it is convincing. It is harder to follow the trail of the erring husband than that of the guilty wife, but in this case it is fairly well blazed. As we have intimated defendant committed no error of judgment when she charged plaintiff with being engaged in an illicit pursuit of the Kalmazoo woman. Plaintiff appears to have had an extensive and intimate acquaintance with lewd women. Some even came to his place of business and he knew where to go to find them. Decent men avoid such people. There are some specific surface indications in the record but we will not refer to them. In the direct examination of plaintiff he was asked: "Have you been in any assignation house, associating with lewd women?" And answered, "No, sir, absolutely not, it was one of the things you cautioned me to be very particular about," (addressing his lawyer). His lawyer promptly changed the subject. The examination went over the noon recess and after its resumption his lawyers returned to the subject and plaintiff explained that in hunting evidence against his wife he had visited places of ill re-

pute and that his lawyer had told him to keep away from such places. The explanation is ingenious and plausible but in view of all the disclosures in the record we are inclined to regard the answer to the original question as an involuntary expression of the true fact. It was a slip of the tongue that told more than was intended to be told.

These considerations compel us to hold that neither party is entitled to a divorce.

Passing to the motion of defendant for an allowance of alimony *pendente lite* and suit money we think the court erred in not making suitable provision for the support of defendant and the child and for the prosecution of the appeal. If it was true that defendant was without means of her own and dependent on plaintiff, she should have been made a suitable allowance for suit money, including a reasonable compensation to her attorneys for their services in this court and also an allowance of alimony *pendente lite* sufficient to pay the reasonable cost of the support of defendant and the child pending the appeal. But we must overrule defendant's motions for the reason that appellate courts have no jurisdiction to make allowances of alimony or suit money pending the appeal. [State ex rel. v. St. Louis Court of Appeals, 88 Mo. 135; Dawson v. Dawson, 37 Mo. App. l. c. 210.] Original jurisdiction in such matters is vested alone in the circuit court. No appeal was taken from the judgment of the circuit court disallowing alimony and suit money and there is nothing before us for review except the judgment awarding a divorce to plaintiff and giving him the custody of the child.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed.

All concur.