**Dr. Arthur J. DIETRICH (Plaintiff), Appellant-Respondent,**

v.

**Mary Claire DIETRICH (Defendant), Respondent-Appellant.**

**Nos. 29362, 29363.**

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1956.

Harry Gershenson, St. Louis, for respondent-appellant.

J. Jules Brinkman, Joyce I. Pueser, St. Louis, for appellant-respondent.

WOLFE, Commissioner.

This case comes to the writer upon reassignment. It is an action wherein Dietrich sought a divorce and his wife by cross bill sought separate maintenance. The trial resulted in the court denying a divorce to plaintiff and denying a decree of separate maintenance to the defendant. Both parties have appealed.

The plaintiff, who is a doctor of dentistry, charged in his petition for a

divorce that his wife had rendered his condition as her husband intolerable in that she was argumentative, that she mismanaged household expenditures, criticized his method of conducting his profession of dentistry, and used insulting language toward him. He further alleged that on one occasion she threw a dish at him and cut his head and that she had falsely accused him of associating with another woman.

The defendant in her answer denied all of the charges of misconduct on her part and countercharged that her husband had remained away from home for days and weeks at a time, that he told her on numerous occasions that he did not love her and wanted a divorce. She further alleged that he failed to properly provide for her and her two children born of the marriage and that he has abandoned her. She charged that he forcibly ejected her and the children from his office and that he had improperly associated with another woman.

It was upon the issues thus formed that the case was tried and Dietrich testified about the indignities alleged. He stated that he was married to Mrs. Dietrich in 1943 and that there were two children born of the marriage. They are boys who were of the age of ten years and two years at the time of the trial. The parties lived together until February of 1952 when Dietrich left, but he returned later and they continued living together until March of 1953. He stated that his home was not kept clean and that his wife refused to prepare his breakfast. He said that she had a violent temper and that on one occasion she struck him on the head with a dish and that his head was cut by it. He testified that at one time his wife asked him if he wouldn't like to know who the father of their child was. He also said that his wife refused to consider buying a home in Kirkwood. He testified that he wanted her to work in his office as a receptionist but that she refused to do this. She objected to the long hours that he kept and complained that his income was low. He said that his gross income was about $10,000 a year and that after expenses, which included $50 a week for an assistant, he had a net income of only $350 a month.

On cross-examination plaintiff was asked about a Mrs. Heidemann who had been employed as his assistant. She was a woman who had been twice divorced and had two children. He said that he paid her $200 a month. She occasionally worked for him at night and at such times he took her to a restaurant for an evening meal. For a while he drove his car to her home in the morning and took her children to school. He said that he did this so that Mrs. Heidemann could get to work by 8:30. At other times he let her have his car and keep it overnight. On one occasion he went on a trip to Chicago with her and her four-year old child. He said that the purpose of his trip was to look over a dental office he was considering buying. He stated that they left St. Louis in the morning and returned the same day. He said that he had never taken Mrs. Heidemann out socially. He admitted that he had on a number of occasions told his wife that he did not love her and was going to another state to get a divorce. He testified that he treated from ten to fifteen patients a day and that he frequently worked until one and two o'clock in the morning. He said that he owed about $4,000. This testimony in addition to the testimony of two character witnesses who briefly stated that Dietrich bore a good reputation was substantially all of plaintiff's case.

The defendant testified that up until 1952 they were happily married. Her husband bought a clubhouse in the country and their life was congenial. After she became pregnant with her second child her husband became surly and disagreeable. He remained away from home and told her that he was treating gangsters in Illinois and was obliged to sleep in a tavern. In February of that year he said that he could not be bothered by coming home and after that he would just make weekly visits. In

June, about four weeks before the child was born, he came home and slept there, but he was gone every Saturday and Sunday and continued to keep late hours. From then on he never took the defendant or their children out and in March of 1953 he left. In May of 1954 he filed suit for a divorce. He told her that he had filed the suit and she said that he told her he would spend a fortune to get his freedom. According to her, he said that he would have a man rape her if she opposed his suit and that he would have any witnesses who testified against him beaten up.

Mrs. Dietrich said she heard her husband was having an affair with the woman in his office and when she asked him about it he replied that he would "neither affirm nor deny it". She employed a detective who made a one-day check upon her husband's activities and she herself went to the home where Mrs. Heidemann lived and saw her husband go in. On one occasion, when their son was ill, she called Dietrich and asked him to come see the child and he told her he was going on a hunting trip to Cape Girardeau. Later that same day her mother saw him at the home in which Mrs. Heidemann then lived.

Mrs. Dietrich testified that she gave her husband no cause for the treatment that she received from him and said that she had repeatedly begged him to return to her. She said that she had always prepared his breakfast and was economical in operating her household. She did not know what his income was but he had paid the household bills, such as rent, utilities, phone and fuel, and given her $24 a week for groceries from the time of the separation. She said that he was slow in paying some of the bills and ordering fuel.

Defendant's mother, who stayed in a room in their house occasionally, said that she had never had a cross word with Dietrich and that she seldom saw him because he would not get in until around two

in the morning. She heard her daughter frequently plead with him to resume their marital relations and heard him rebuff her. She said that she saw him at the Heidemann home at the time he was supposed to be in Cape Girardeau.

A witness on behalf of defendant testified that he had been with Dietrich on one occasion at a night club when Dietrich had Mrs. Heidemann as his companion and the witness testified that he had also seen her with Dietrich at his clubhouse.

Dietrich here contends that the evidence showed him to be the innocent and injured party and that the court erred in denying him a decree of divorce.

In passing upon this question, it is our duty to review the evidence and to draw our own conclusions from it. Our review is, in effect, a trial de novo. We look upon the findings in the lower court as persuasive but not binding upon us. We do, however, yield to the trial court's judgment when the testimony is conflicting and the facts are close. This is because of its better position to judge the credibility of the witnesses." Gibson v. Shull, 251 Mo. 480, 158 S.W. 322; Reeve v. Reeve, Mo. App., 160 S.W.2d 804; Remley v. Remley, Mo.App., 208 S.W.2d 815. This case is one in which we should defer to the finding of the trial court. Dietrich denied that he had been out socially with Mrs. Heidemann and also said that he did not know the name of the street where she lived after she moved from the house where he frequently visited. He was seen on that street at her house and there was testimony that he did go out on purely social affairs with her, so his credibility was in question. He gave no convincing reason for his neglect of his wife and children and if the court believed Mrs. Dietrich, which it apparently did, then there was no basis for a finding that he was the innocent and injured party.

As to Mrs. Dietrich's appeal, she asserts that the court erred in not award-

ing her a decree of separate maintenance. A decree of separate maintenance must be bottomed upon proof of two equally essential elements. One is that the husband abandoned his wife without good cause and the other is that he has refused or neglected to maintain or provide for her. Hoynes v. Hoynes, Mo.App., 218 S.W.2d 823; Herbig v. Herbig, Mo.App., 245 S.W.2d 455. As to the first she had sufficient proof. There was no dispute about the fact that Dietrich left her and the court could well have found that he left without good cause. While it is true that there was testimony by Dietrich of statements and outbursts by his wife which were not to her credit, these did not indicate a continued course of conduct such as would preclude her from relief. Hoffman v. Hoffman, Mo.App., 224 S.W.2d 554; Rowland v. Rowland, Mo.App., 227 S.W.2d 478. Nor could Dietrich properly complain about outbursts brought on by his own misconduct. Rowland v. Rowland, supra.

As to the second requirement, there was not sufficient evidence to show that Dietrich had either refused or neglected to support his wife. She did not know what his income was and while he was slow in paying the bills he did take care of his family's needs in the same fashion that he had done during the time of their cohabitation which appeared to be in a sum commensurate with his income. For this reason the court properly denied her petition for separate maintenance.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

RUDDY, Acting P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.