**William L. EASTON, Plaintiff-Appellant,**

**v.**

**Luvena Mable EASTON, Defendant-Respondent.**

**No. 23537.**

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1962.

Charles S. Stratton, Clinton, for appellant.

Harvey Burrus, Independence, for respondent.

HUNTER, Presiding Judge.

This is an appeal by plaintiff-appellant, William L. Easton from an adverse judgment on the cross petition of his wife, Luvena Mable Easton, defendant-respondent, for separate maintenance.

On October 20, 1960, plaintiff filed a petition for divorce. On November 7, 1960, defendant filed her answer. On June 5, 1961, the day the cause was set for trial, defendant without objection from plaintiff, filed her cross petition for separate maintenance, and plaintiff immediately filed his answer to the cross petition. The trial was held on June 5, 1961, and on June 12, 1961, the trial court found the issues for defendant on plaintiff's petition and for defendant

on her cross petition for separate maintenance, awarding defendant $225.00 per month and $150.00 attorney fee.

On this appeal plaintiff presents two contentions of error: (1) That the trial court erred in granting defendant judgment on her cross-claim for the reason that there was not sufficient evidence to entitle defendant to a divorce and that by her own testimony she was not an innocent and injured party; and (2) that the cross-claim states no action for separate maintenance because it is devoid of the statutory allegation that plaintiff has failed and refused to support defendant and the record is devoid of any evidence that plaintiff failed and refused to support defendant. We will review these contentions in the order presented.

The right of a wife to sue her husband for separate maintenance has been recognized as originally coming within the inherent jurisdiction of a court of equity. However, Missouri as have many states, has by statute authorized the action and prescribed its elements. Because of its equitable origin and nature equitable considerations and procedures are applied in a suit for separate maintenance. Hoynes v. Hoynes, Mo.App., 218 S.W.2d 823; Oakes v. Oakes, Mo.App., 303 S.W.2d 940. On appeal our duty is to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. Section 510.310 RSMo 1959, V.A.M.S.

Our separate maintenance statute, Section 452.130 RSMo 1959, V.A.M.S. provides: "When the husband, without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her, the circuit court, on her petition for that purpose, shall order and adjudge such support and maintenance to be provided and paid by the husband for the wife and her children, or any of them, by that marriage, out of his property, and for such time as the

**168**

nature of the case and the circumstances of the parties shall require * * *."

Plaintiff cites such cases as Oakes v. Oakes, supra, and Noll v. Noll, Mo.App., 277 S.W.2d 853, for the general statement that in order to successfully maintain a decree of separate maintenance the wife must prove facts which would entitle her to a divorce if that were the relief sought, and that one of these requirements is that she must be an innocent party.

■ Defendant's evidence was that she and Bill (plaintiff) were married April 13, 1942. September 4, 1943, a daughter was born of the marriage. Defendant and her husband got along well in their marriage until about the time her husband's employment changed from Kansas City to Clinton, Missouri, in 1959. She remained at their Independence, Mo. house with the daughter. He came home on week ends. This lasted over a year. On February 14, 1960, she and the daughter moved to Clinton to a home Bill obtained there. About two or three months after Bill first went to Clinton he became friendly with a young lady named Nora ———. Bill would bring his laundry home on Friday nights with lipstick all over his shirt collars. When she asked him about it Bill denied he "had been around anybody else". She learned he had been seeing Nora. The lipstick-on-the-shirt-collar incidents continued steadily for about a year and a half. She asked him not to see Nora anymore and he said, "I'm not seeing anybody." On two or three occasions such as this he struck her. Once he hit her with his fist, giving her a black eye. On another occasion he hit her on her arms and legs with some wire coat hangers.

· In the latter part of May, 1960, Bill came home after an army reserve meeting with lipstick and make up on his clothes. She asked him who had put it on and where he had been. He wouldn't talk and she became angry and hit him on his right arm several times with her purse. (He said it was with her shoe.) Bill told her he was through and was not going to live with her any longer.

He moved all of his things from the house and took them to his parents' home. Thereafter they have not lived together as man and wife. She and Bill had been given a notice to vacate their Clinton home on July 1st, so about that time she moved back to Independence to the house she and Bill owned and previously had occupied. Bill helped her move. He has visited her and their daughter at the Independence address usually every Monday night. On these occasions she asked him to forget about Nora and to reestablish his home with them someplace. She is still desirous of doing that but he refuses.

On October 6, 1960, she and her mother visited Clinton and went to the apartment where Bill and his friend, Mr. Johnston lived. There they saw Nora in the apartment washing dishes. Numerous dresses and other feminine garments were visible in the apartment. Nora left before they could speak to her. Bill then told her he had gone to see an attorney. On October 20, 1960, she was served with his petition for divorce.

Bill testified that commencing in 1946 his wife accused him of being out with other women and of excessive drinking and called him names. He asserted that upon some occasions she threw dishes and ash trays at him and threatened to stick him with a knife or scissors. When asked about the lipstick incidents he stated, "She would ask if I had been out with another woman, and I told her no, that I had stopped at a tavern or something like that and had a drink and possibly danced with someone, but as far as being out with another woman, no. Q. What she first objected to was the lipstick on your collar, on your clothing? A. Right. Q. And that occurred about every time she cursed you, that question of lipstick was the thing that brought it on? A. That is right." He conceded that upon occasion he did have lipstick on his clothes, again explaining "I might stop on the way home from work, or something like that, or from reserve meeting with a bunch of fellows, and have a drink, possibly I danced a

dance or something like that with someone there."

As to his relationship with Nora he was asked, "Q. How many times would you say you have been out with her? A. Oh, five or six times in two years." He said Nora was the girl friend of his close friend Johnston. He acknowledged she came to the apartment he and Johnston shared after his separation from his wife, and did laundry and dishes and housework for the two of them without charge. He denied Nora was anything but a friend.

While the above is not a complete résumé of the evidence it is sufficient to illustrate the lack of merit in plaintiff's first contention of error. There was sufficient evidence, if believed, to entitle defendant to a divorce. Plaintiff's conduct of frequently coming in late in the evening with liquor on his breath and lipstick on his clothes with the statement he innocently got it from a stop at a bar where he drank and danced with unnamed women taxes credulity. His response of striking and beating his wife upon her questioning him about it was unjustified. The evidence concerning his relationship with Nora viewed in the light of his other conduct is subject to the inference that he was not faithful to his marital vows.

■ Nor is there merit in plaintiff's statement that defendant by her own testimony was not an innocent and injured party. Complete innocence is not a prerequisite to relief. The degree of innocence a party must have in a contested action for divorce or separate maintenance in order to remain eligible to obtain the divorce or separate maintenance is not such as to require that his or her conduct toward the spouse on all occasions be letter perfect and above all reproach. The accepted general rule is that the conduct of one party will not prevent him from being adjudged an innocent party unless his conduct was such as to entitle the other party, prima facie, to a divorce. Harwell v. Harwell, Mo.App., 355 S.W.2d 137;

Stevens v. Stevens, Mo.App., 158 S.W.2d 238; Culp v. Culp, Mo.App., 164 S.W.2d 623. Defendant denied many of plaintiff's accusations including any threat of sticking him with a knife or scissors. The other incidents she explained were in the main brought on by his own misconduct. It would serve no useful purpose to review each in detail. Suffice it to say that her testimony, if accepted as credible, did show her to be the innocent and injured party.

■ We reach plaintiff's second contention which presents a more difficult question. Our statute, previously quoted, requires a wife seeking a judgment of separate maintenance both to plead and prove that (1) the husband, without good cause, abandoned his wife, and (2) refused or neglected to maintain and provide for her. If either element, abandonment or failure to properly support is absent the wife is not entitled to recover. Genazzi v. Genazzi, Mo.App., 343 S.W.2d 686; Woodman v. Woodman, Mo.App., 281 S.W.2d 555(1); Knese v. Knese, Mo.App., 217 S.W.2d 394(1).

As stated in Genazzi v. Genazzi, Mo.App., 343 S.W.2d 686, "The element of abandonment may be shown to be actual, that is, where the husband (without her consent) leaves his wife and remains away from her without just cause with the intent to discontinue the marital relation, or he may abandon his wife by treating her in such a way as to justify her in refusing to live with him as his wife. * * * Failure or refusal to support is shown by proof that the husband has failed to suitably provide for his wife, taking into consideration the manner in which she was accustomed to live, the wife's necessities, the husband's needs and his ability to pay. Bingham v. Bingham, 325 Mo. 596, 29 S.W.2d 99; Reeve v. Reeve, supra [Mo.App., 160 S.W.2d 804]; Stauffer v. Stauffer, Mo.App., 313 S.W.2d 597. And even where the husband, after abandonment, has been contributing to his wife's support, the court may inquire into the sufficiency of such contribution. Hoynes v. Hoynes, Mo.App., 218 S.W.2d 823."

■ In her cross petition for separate maintenance defendant alleged that "plaintiff has absconded himself from her without reasonable cause since said marriage for more than one year prior to the filing of this cross petition." While no model, this is a sufficient allegation that her husband without good cause abandoned her. The words "without reasonable cause" have been ruled to be a legal conclusion. However, defendant has further pleaded facts which, if true, demonstrate that the abandonment was without reasonable cause. See, Dietrich v. Dietrich, Mo.App., 209 S.W.2d 540(3).

■ Both plaintiff and defendant testified that plaintiff left the defendant with the continuing intent never to return and live again with her as man and wife and has remained away from her over one year. The effect of the finding of the trial judge is that plaintiff did not have good cause to leave her, and upon our own review of the record we agree with the trial judge on this question.

■ We now reach plaintiff's final contention which we find to be meritorious. In her cross petition for separate maintenance defendant does not anywhere allege that the plaintiff refused or neglected to maintain and provide for her. The closest she comes to such an allegation is her statement "that she is wholly without means to support herself * * *." This statement, standing alone and unexplained, in a cross petition filed by her over four months after she had been granted and was being paid an ample award of temporary support by the trial court, is not a substantial compliance with the statutory requirement that she must allege her husband refused or neglected to maintain and provide for her.

■ Although defendant has not suggested or requested it we have considered whether this missing necessary allegation can now be supplied by considering the cross petition to be amended to conform to the proof. There is no contention that plaintiff failed to support his wife when they were living together. The contention tacitly is that he did not provide necessary support to her after they ceased living together. The payment by plaintiff, commencing over seven months after he left her, of the temporary allowance for her support as ordered by the court is not a voluntary payment and does not resolve the question of whether plaintiff refused or neglected to maintain and provide for his wife after he abandoned her and before he commenced his payments required by the court's order. Unfortunately, for the defendant, the transcript is barren of any testimony, evidence or proof, concerning whether plaintiff refused or neglected to maintain and provide for her after their break up about June 1, 1960, and until January 30, 1961, when defendant obtained from the court the temporary allowance of $210.00 per month which the briefs indicate has been paid to the date of the judgment herein. Hence, we must and do conclude and rule that defendant has neither pleaded nor proved that her husband refused or neglected to maintain and provide for her as required by the statute.

In the interest of justice it is necessary to reverse the judgment and remand the cause for a new trial on defendant's cross petition for separate maintenance. This will give defendant the opportunity to amend her cross petition to comply with the statutory requirement that it contain her allegation that her husband refused or neglected to maintain and provide for her. It will also afford opportunity for her to present her evidence on this question and give the plaintiff an opportunity to present his evidence on it.

Since plaintiff on this appeal has not challenged that part of the judgment finding the issues for defendant on his petition for divorce he is deemed to have abandoned any such challenge and may not relitigate his petition for divorce.

The judgment is reversed and the cause is remanded for a new trial on defendant's cross petition. It is so ordered.

All concur.