Alvin F. JOHNSTON, Plaintiff-Respondent,

v.

Myra JOHNSTON, Defendant-Appellant.

Nos. 24002, 24022.

Kansas City Court of Appeals.
Missouri.

Nov. 25, 1964.

———◆———

Darold W. Jenkins, Marshall, for appellant.

James & Butterfield, A. Lamkin James, Marshall, for respondent.

SPERRY, Commissioner.

Plaintiff, Alvin F. Johnston, sued defendant, Myra Johnston, for divorce. From a judgment in favor of plaintiff, granting him a decree of divorce, denying defendant's counterclaim for separate maintenance and allowing her the sum of $800.00 to reimburse her for money paid by her on property owned by plaintiff, defendant appeals.

After the above judgment was entered defendant filed motion for alimony pending appeal, and for attorney's fees and other necessary expenses for prosecuting an appeal from the judgment. From a judgment in favor of defendant on the motion, in the amount of $350.00, she has appealed. Both appeals will be ruled herein.

Plaintiff alleged that defendant had offered him such indignities as to render his condition in life intolerable. Defendant, generally, denied such allegations and counterclaimed for separate maintenance, based on general allegations of his misconduct. She complained that plaintiff had made scandalous accusations against her and told her that he did not love her. The testimony adduced, covering the relationship between the parties, came from defendant, and three of her children.

Plaintiff and defendant were married in June, 1958, at which time he was about fifty years of age and she was, approximately forty-eight. This petition was filed June 3, 1963. This was plaintiff's third marriage. One son, seventeen years of age, lived with him in his home in Slater, Missouri. It was defendant's second marriage. She had five children, the two youngest, a son and a daughter, seventeen years and fifteen years of age, respectively, lived in the house occupied by defendant, located a block from plaintiff's home. The others lived in other locations. This house had belonged to defendant and her former husband. They had occupied it, together with their children prior to their divorce. At that time, they deeded it to their two oldest sons. Defendant lived there, with her two

children, above mentioned, prior to this marriage.

The parties lived near each other and frequently were together at plaintiff's home prior to the marriage. Defendants' children bitterly criticized this conduct and also bitterly opposed the marriage. Defendant's former husband, the father of her children, lived in Slater until his death a short while prior to the trial of this cause. He contributed some money toward the support of the two youngest children who, it was agreed between these parties, should continue to live in their own home after their mother's marriage. However, within a short time, they moved into the home with plaintiff and defendant. Defendant moved a part of her furniture to the new home but also kept furniture in the other house where, plaintiff contended, she would visit with her former husband; but his testimony in that respect was not otherwise substantiated.

At the time the marriage was consummated, plaintiff owed a considerable sum of money on his house, which was being paid by monthly installments. During the marriage the parties worked at the Missouri State School, at Marshall, each earning the exact same amount monthly. Both checks were regularly deposited in the same bank and both parties checked on the account for all of their expenses. The installment payments on the house were paid out of this account so that defendant actually paid, on the principal indebtedness, the total sum of $800.00. She claimed this amount, in her testimony, and the Court allowed it as a judgment in her favor against plaintiff. Neither party complains of this action.

Defendant's two younger children lived with the parties until they entered college, and plaintiff complained, throughout the trial, that there were too many "Rupperts" (defendant's children) in the home; that there were three there every week end; that defendant nagged at him about his failure to transfer to her a record interest in his house; that defendant made frequent visits to her house where Mr. Ruppert lived a part of the time; that she talked with him at various other places. He professed to have been unhappy about these various matters from and after the first year of the marriage. It is clear that there was a positive lack of harmony in the home and that such condition had existed from the early months of the marriage.

The record shows that defendant owns no property excepting some household goods and an interest in a 1955 automobile owned jointly by the parties. Her sole income is a monthly net take home pay from the School, of $189.00 which, the evidence shows, is scarcely enough to defray her minimum living expenses. She has had to pay no rent since the separation for the reason that she continues to occupy plaintiff's house.

Plaintiff owns an equity in his home worth, perhaps, $4,000.00. He has a house trailer, in which he lives, but he owes on it about what it is worth. He owes the expenses of the divorce proceedings, including cost of appeal, attorney fees for himself and defendant, the $800.00 judgment in favor of defendant, and other money he borrowed to pay necessary expenses. His earnings are about $189.00 per month. His doctor bills run about $30.00 monthly.

Defendant says that the Court's finding to the effect that plaintiff is the innocent and injured party and is entitled to a decree of divorce, is contrary to and against the weight of the evidence.

Plaintiff pleaded the following:

1. That she, defendant, by her every action does not have the proper love and respect for him consistent with the marital relation;

2. That she pays more attention to her children than to him;

3. That she refuses to make a home for him and is neglectful regarding same;

4. That she frequently nags him;

5. That she makes false accusations against him.

Throughout plaintiff's testimony, consisting of 163 pages, he stated over and over again, that he had been unhappy in his home life since the early days of the marriage. It appears, from the whole record, that there was friction between plaintiff's son and defendant and her two children from and after her children moved into the home, and that plaintiff felt that he was not treated as a husband should be treated by a loving wife. Defendant's children disliked plaintiff and disapproved of the marriage. After plaintiff's son left home and, later, after defendant's two youngest children left for college, plaintiff complained that three of defendant's children were in the home every week end. He stated that defendant "nagged" him for not deeding to her an interest in his home, even though they had agreed before the marriage that he would not do so. She stated in evidence that she repeatedly asked him to do so. He pleaded that defendant made false accusations against him and her counsel questioned plaintiff at length regarding his alleged association with other women. He denied such associations except in their homes, with their husbands, where labor union matters were discussed. He stated that she paid more attention to her children than she did to him. It is apparent that there can never be a reconciliation between the parties.

In Harwell v. Harwell, Mo.App., 355 S.W.2d 137, 141, 142, this Court said that indignities, to warrant the granting of a divorce, ordinarily must amount to a continuous course of conduct such as to connote hate and a plain manifestation of alienation and estrangement. According to the testimony of plaintiff, defendant's continuous conduct toward him over a period of years was calculated to render him un-happy. The learned Court saw and heard the witnesses testify. The Court's findings in this case are persuasive. We yield to the trial Court's judgment where, as here, the testimony is conflicting and the facts are close. Dietrich v. Dietrich, 294 S.W.2d 569, 571. We hold that, from the evidence *in this case,* the trial Court could have properly found that plaintiff was subjected to such indignities as to render his condition in life intolerable; that he is the innocent and injured party; that he is entitled to a decree of divorce; and that defendant's counterclaim should be denied. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455, 456.

Defendant contends that the trial Court's allowance for appeal expenses is inadequate. She states that there has been paid $20.00 for filing fees, that the cost of the transcript is $270.00. When these items are paid there would be left $60.00 for printing the brief and for attorney fees for defendant. We hold that amount to be inadequate. We are in a better position to pass on this question than was the learned trial Court who could not have known, at the time the order was made, what the cost of the transcript would be. It is, therefore, ordered and adjudged that plaintiff pay to counsel for defendant, for use of defendant, the sum of $500.00 for the above purposes.

The judgment granting plaintiff a divorce from defendant and denying her counterclaim is affirmed. It is further ordered that plaintiff pay the sum of $500.00 to defendant's attorney of record.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.